859 F.2d 407
 103 A.L.R.Fed. 755
 The WESTERN & SOUTHERN LIFE INSURANCE COMPANY, Plaintiff,
v.
George and Regina SMITH, Defendants-Third Party Plaintiffs-Appellants,
Samuel Pierce, Secretary, United States Department of
Housing and Urban Development, Third Party
Defendant-Appellee.
 No. 87-3610.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 25, 1988.
Decided Oct. 7, 1988.
 
 Stephen R. Buchenroth, Columbus, Ohio, for Western & Southern Life Ins. Co.
 Joseph E. Kane, Asst. U.S. Atty. (argued), Columbus, Ohio, Robert Leong, Office of Regional Counsel, H.U.D., Chicago, Ill., for third party defendant-appellee.
 Before KRUPANSKY and WELLFORD, Circuit Judges, and GILMORE, District Judge.*
 KRUPANSKY, Circuit Judge.
 
 
 1
 George and Regina Smith, the defendants-third party plaintiffs-appellants in this action (collectively referred to as the Smiths or appellants), have appealed from the district court's grant of summary judgment in favor of Samuel Pierce, the Secretary of the United States Department of Housing and Urban Development (hereafter referred to as the Secretary or as HUD). The Smiths had sought declaratory and injunctive relief mandating HUD to accept assignment of the appellant's home mortgage.
 
 
 2
 The record disclosed the following underlying facts. The Smiths had executed a mortgage on their home in Columbus, Ohio in April of 1973. The initial mortgagee was Marvin C. Yerke and Associates, Inc.; the mortgage was later assigned to the Western and Southern Life Insurance Company (hereafter Western Life). The mortgage note was insured by the Federal Housing Administration (FHA), a branch of the United States Department of Housing and Urban Development.
 
 
 3
 From 1973 until 1983, the Smiths made regular and timely mortgage payments. In June of 1983, both George and Regina Smith voluntarily left their respective positions of employment which left them without any source of income other than some $15,000 in retirement savings which George Smith had received from his former employer, the City of Columbus. Once the Smiths had exhausted this retirement fund late in 1983, they were unable to continue their monthly mortgage payments and ultimately defaulted on the mortgage.
 
 
 4
 The Smiths contacted Western Life, and advised the company of their financial circumstances. Western Life filed an application with HUD on behalf of the appellants, pursuant to statutory authority,[1] requesting that the agency accept an assignment of the Smiths' mortgage in lieu of foreclosing on the property. The Secretary reviewed the application for assignment, and notified the appellants by letter of its tentative decision not to accept the mortgage, because the Smiths had not satisfied one of the requisite elements for eligibility for an assignment: namely, proof that the default had been caused by circumstances beyond the mortgagor's control.[2] That same letter advised the Smiths that they could challenge HUD's initial decision by requesting review of the agency's decision within fifteen days from the receipt of the notice and by providing the agency with specific documentation from either an employer or a physician as to the date and the specific reason for the termination of both George and Regina Smith. In addition, the letter indicated that HUD would provide assistance, without charge, if the Smiths needed help in challenging the agency's initial decision.
 
 
 5
 The appellants subsequently requested a review of HUD's initial determination,[3] and a conference was conducted on August 16, 1984 between the Smiths and two representatives of HUD, pursuant to 24 C.F.R. Sec. 203.656. Although HUD had requested specific documentation from the Smiths as to the date and the precise reason for their termination of employment, the explanations provided by the Smiths during this conference were conclusory, conflicting and unsubstantiated. George Smith told the HUD representatives that he had quit his job at the City of Columbus water treatment plant because he had experienced physical problems from the sewage plant chemicals. George Smith's termination slip from the City of Columbus, however, disclose only that he had resigned effective June 24, 1983 because of an "insufficient sick leave accumulation." George Smith had not received professional medical assistance for any physical or mental problems. The only documentation provided by the Smiths of George Smith's medical condition consisted of a note from a physician, Dr. Baker, that George Smith had a history of not "feeling well." It provided no explanation as to the nature or cause of any medical impairment, and failed to indicate that George Smith would be unable to continue working at the water treatment plant.
 
 
 6
 The Smiths also submitted a letter from their pastor, Bishop William Latta, in which Reverend Latta stated that he had been counselling George Smith for "some difficult mental problems stemming from his childhood." There was no explanation nor documentation as to the nature or the effect of any emotional disorder. The only documentation which Regina Smith submitted concerning the circumstances of her employment termination consisted of a letter from her former employer, Blue Shield, which explained that Regina Smith had voluntarily left her employment on May 6, 1983 because "she was having family problems and was unable to adequately deal with them while still remaining employed."
 
 
 7
 Western Life filed a foreclosure action in the Franklin County Court of Common Pleas against the appellants on August 9, 1984, alleging a default in the payment of the mortgage note. On September 5, 1984, HUD advised the appellants that, after considering the additional information which they had supplied, the agency had concluded that there was insufficient evidence presented to demonstrate that the appellants' default had been caused by circumstances beyond their control. Consequently, HUD made a final decision not to accept the assignment of the Smiths' mortgage. The appellants then filed a third party complaint against the Secretary, asserting that HUD had failed to properly service the loan by having refused to accept assignment upon default, and requesting declaratory and injunctive relief. The entire action was removed by HUD to the United States District Court for the Southern District of Ohio on October 18, 1984.[4] On July 12, 1985, the case was transferred to be heard before a magistrate with the consent of all parties. After cross motions for summary judgment had been filed, the Magistrate granted summary judgment in favor of HUD on March 5, 1987, and in favor of Western Life on April 23, 1987. The appellants filed a timely appeal of the magistrate's decision regarding HUD.[5]
 
 
 8
 On appeal, the Smiths have urged this court to find that the magistrate erred in concluding that HUD's determination (that the Smiths had failed to satisfy the agency's requirements for the acceptance of an assignment of their mortgage) was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. Sec. 706(2)(A) (West 1970); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); see also Anderson v. United States Dep't of Hous. & Urban Dev., 701 F.2d 112, 115 (10th Cir.1983); Federal Property Management Corp. v. Harris, 603 F.2d 1226, 1230 (6th Cir.1979); accord State of Ohio v. Ruckelshaus, 776 F.2d 1333, 1339 (6th Cir.1985), cert. denied sub nom. Ohio v. Thomas, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986). In applying this standard, this "court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Norwich Eaton Pharmaceuticals, Inc. v. Bowen, 808 F.2d 486, 493 (6th Cir.) (quoting Citizens to Preserve Overton Park, 401 U.S. at 416, 91 S.Ct. at 823-24), cert. denied, --- U.S. ----, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987); Kentucky Util. Co. v. United States Fed. Energy Regulatory Comm'n, 766 F.2d 239, 242 (6th Cir.1985) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.8. 281, 285-86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)) (applying identical standard). "Where the disputed issue particularly calls into play the special adeptness of the administrative body, there arises 'a presumption of validity' which attaches to the administrative decision." Kentucky Util. Co., 766 F.2d at 242-43 (quoting In re Permian Basin Area Rate Cases, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312 (1968)); see also Ruckelshaus, 776 F.2d at 1339 ("[T]he [Administrative Procedure Act] standard presumes that agency actions are valid and that we are required to uphold [such agency] decisions supported by a 'rational basis.' "); Air Pollution Control Dist. of Jefferson County, Ky. v. United States Envtl. Protection Agency, 739 F.2d 1071, 1083 (6th Cir.1984) ("The 'arbitrary or capricious' standard of review is a deferential one which presumes that an agency's actions are valid.").
 
 
 9
 The statutory provisions relating to the assignment of housing mortgages provides the Secretary of Housing and Urban Development with broad discretion to implement the objectives of the national housing program. See generally Federal Property Management Corp., 603 F.2d at 1229.
 
 
 10
 The mortgage assignment program at issue was enacted in 1959 as section 114 of P.L. 86-372, Section 230 of the National Housing Act of 1934, as amended (12 U.S.C. Sec. 1715u), subject to such regulations as the Secretary of HUD may prescribe.... 12 U.S.C. Sec. 1715u(b)(1). The legislative history of section 230 of the National Housing Act shows that Congress intended implementation of the mortgage acquisition program to be at the discretion of the Secretary of HUD:
 
 
 11
 By retaining [section 114 and adding section 230 to the National Housing Act] in S.2654, it is the intent of the committee that they are discretionary with the [Secretary of Housing and Urban Development] and are to be used only in hardship cases involving deserving mortgagors.
 
 
 12
 Sen.Rep. No. 924, 86th Cong. 1st Sess. at 2, [1959] U.S. Code Cong. & Ad. News 2844, 2853. This language of the Senate report also indicates that assignment of defaulted FHA insured mortgages was meant to be an extraordinary form of relief, to be used only in true cases of hardship.
 
 
 13
 Miasel v. Pierce, 650 F.Supp. 21, 24 (D.Minn.1986). In the exercise of the authority granted to him by statute, the Secretary has enacted regulations which list six specific conditions which must be proved before the Secretary of HUD will accept the assignment of a particular mortgage. See 24 C.F.R. Sec. 203.650. The condition which has been joined in this appeal provides that "[t]he mortgagor's default [must have] been caused by circumstances beyond the mortgagor's control." 24 C.F.R. Sec. 203.650(a)(5); see also Anderson, 701 F.2d at 115; Miasel, 650 F.Supp. at 24; Grasty v. United States Dep't of Hous. & Urban Dev., 636 F.Supp 912, 913 (E.D.Pa.1985). In the case at bar, it is undisputed that the Secretary of HUD applied the relevant factors in examining whether the Smiths had met the requisite six factors outlined under Sec. 203.650(a), and ultimately concluding that there was insufficient evidence to demonstrate that the default had occurred because of circumstances beyond the appellant's control.
 
 
 14
 The appellants have charged that HUD should bear the burden of proof regarding the six conditions required by Sec. 203.650(a), and that as a result, the agency erred in rejecting the application for a mortage assignment based upon the Smiths' failure to prove that the loss of income was due to circumstances beyond their control. An examination of the pertinent regulations relating to the mortage assumption program, which were enacted by the Secretary in the exercise of the discretionary authority granted to him by Congress, demonstrates that it is the mortgagor who has the burden of proving the six listed conditions to qualify for the assignment of his mortgage. See 24 C.F.R. Sec. 203.650(a); see also Anderson, 701 F.2d at 114 ("[W]e find nothing in the mentioned citations which imposes an obligation on HUD to any party in a mortgage transaction other than the mortgagee."); Miasel, 650 F.Supp. at 22 ("In order to be eligible for the mortgage assignment program, plaintiff needed to meet the ... HUD criteria [listed under Sec. 203.650(a) ].") (emphasis added); Grasty, 636 F.Supp. at 916 ("In light of HUD's guidelines, the Court concludes that HUD's finding that the plaintiff failed to show that he ... did not meet the conditions set by 24 C.F.R. Sec. 203.650(a) is an abuse of discretion.") (emphasis added); id. ("The controlling issue to be resolved in determining whether the plaintiff has met the condition specified by 24 C.F.R. Sec. 203.650(a[ ) ](5) is ... whether [the default] was due to circumstances beyond his control.") (emphasis added). These regulations also provide that, in cases where the agency's preliminary review indicates that the mortgagor does not qualify for assignment, the mortgagor is permitted to present additional evidentiary materials by mail, phone, or in person at a conference with agency personnel. See 24 C.F.R. Sec. 203.654(c); see also Anderson, 701 F.2d at 114 ("At the second assignment conference, ... plaintiff was given full opportunity to support her request for assignment.") (emphasis added); Miasel, 650 F.Supp. at 23; Grasty, 636 F.Supp. at 914-15; accord Armstead v. United States Dep't of Hous. & Urban Dev., 815 F.2d 278, 280 (3rd Cir.1987) (HUD abused its discretion in not permitting applicant an opportunity to rebut agency's preliminary determination that she had failed to qualify for assignment of her mortgage). These provisions place the burden of proof upon the individual mortgagor, who is requesting assignment of his mortgage, to provide sufficient documentation to establish each of the six requirements enumerated in Sec. 203.650(a).
 
 
 15
 In the case at bar, HUD properly notified the appellants that, after a preliminary review of the information provided, the agency had concluded that the Smiths had not demonstrated that their loss of employment was in fact due to circumstances beyond their control. At the same time, HUD advised the Smiths of their right to submit additional information or to request further review. Additionally, HUD furnished the Smiths with a description of the precise information necessary to satisfy the requisite conditions for acceptance of the mortgage assignment, specifically requesting the appellants to document, either from their previous employers or from treating physicians, the reasons for leaving their respective employments, while simultaneously offering to assist the Smiths in the preparation and presentation of such materials. In light of the unsupported and conflicting documented reasons submitted by the Smiths in explanation for terminating their respective employment positions, the Secretary's conclusion that the Smiths failed to qualify for an assignment of their mortgage was a rational determination, and was thus not arbitrary, capricious or otherwise not in accordance with law. See 5 U.S.C.A. Sec. 706(2)(A); see also Anderson, 701 F.2d at 115; accord Norwich Eaton Pharmaceuticals, Inc., 808 F.2d at 493; Ruckelshaus, 776 F.2d at 1339; Kentucky Util. Co., 766 F.2d at 242 (quoting Bowman Transp., Inc., 419 U.S. at 286, 95 S.Ct. at 442); Air Pollution Control Dist. of Jefferson County, Ky, 739 F.2d at 1083.
 
 
 16
 Accordingly, the decision of the magistrate granting summary judgment in favor of the Secretary of Housing and Urban Development is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The relevant statute provides the Secretary of HUD with the discretionary authority to accept assignment of defaulted mortgages
 When the Secretary receives notice of a default ... the Secretary (for the purpose of avoiding foreclosure ...) shall, if determined necessary by the Secretary, acquire the mortgage....
 12 U.S.C.A. Sec. 1715u(b)(1) (West Supp. 1987) (emphasis added).
 
 
 [2]
 Pursuant to statutory authorization, see 12 U.S.C.A. Sec. 1715u(b)(1), the Secretary had enacted regulations detailing six specific conditions which must be demonstrated by the defaulting mortgagor in order to qualify for assignment by HUD. Those regulations state, inter alia, that
 [t]he Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
 (5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency with a reasonable time or make full mortgage payments.
 
 
 [24]
 C.F.R. Sec. 203.650(a)(5)
 
 
 [3]
 The request for this review was not filed within the fifteen day period from the date the Smiths had received notice of the agency's preliminary decision. The Secretary did, however, consider the appellants' request to further review the agency's preliminary determination even though the notice had not been timely filed. Compare Armstead v. United States Dep't of Hous. & Urban Dev., 815 F.2d 278 (3rd Cir.1987.)
 
 
 [4]
 Because the federal courts have exclusive jurisdiction to review federal agency actions under the Administrative Procedures Act, see Aminoil U.S.A., Inc. v. California State Water Resources Control Bd., 674 F.2d 1227, 1233 (9th Cir.1982) (quoting H.R.Rep. No. 94-1656, 94th Cong., 2d Sess. 11 (1976), reprinted in 1976 U.S.Code Cong. & Ad. News 6121, 6131); Kozera v. Spirito, 723 F.2d 1003, 1011 n. 7 (1st Cir.1983); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3659, at 357-58 (2nd. ed. 1985), the Franklin County Court of Common Pleas did not have subject matter jurisdiction over the appellants' third party complaint against the Secretary in the instant case. A federal district court does not acquire subject matter jurisdiction by removal if the state court lacked jurisdiction over the original action since removal jurisdiction is derivative in nature. See Arizona v. Manypenny, 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1655 n. 17, 68 L.Ed.2d 58 (1981) ("In the area of general civil removals, it is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there."); see also Freeman v. Bee Machine Co., 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed.2d 1509 (1943); Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed.2d 235 (1939); Venner v. Michigan Central R. Co., 271 U.S. 127, 131, 46 S.Ct. 444, 445, 70 L.Ed.2d 868 (1926); Lambert Run Coal Co. v. Baltimore & O. Rail Co., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed.2d 671 (1922)
 The Supreme Court, however, has indicated that a defect stemming from the derivative nature of removal jurisdiction can be waived by the parties. "[W]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972); see also Able v. Upjohn, Inc., 829 F.2d 1330, 1334 (4th Cir.1987), cert. denied, --U.S. ----, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988); Farina v. Mission Inv. Trust, 615 F.2d 1068, 1074 & n. 16 (5th Cir.1980); Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511, 518 (7th Cir.1985); Stone v. Stone, 632 F.2d 740, 742 (9th Cir.1980), cert. denied sub nom. Seafarers Int'l Union, Pac. District-Pacific Maritime Ass'n Pension Plan v. Stone, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981); Borg-Warner Leasing v. Doyle Elec. Co., 733 F.2d 833, 835 n. 2 (11th Cir.1984); accord Riggs v. Island Creek Coal Co., 542 F.2d 339, 343 (6th Cir.1976); Stokes v. Merrill Lynch, Pierce, Fenner & Smith, 523 F.2d 433, 435-36 (6th Cir.1975).
 Accordingly, because there is no doubt that the federal district court would have had jurisdiction to review the actions of the Department of Housing under the Administrative Procedure Act had the third party complaint been brought before it in the first instance, any issue concerning the propriety of the removal in the case at bar, based upon the state court's lack of subject matter jurisdiction, was waived by the failure of the parties to have pursued the issue before the federal district court. See, e.g., Foval v. First Nat'l Bank of Commerce, 841 F.2d 126, 129 (5th Cir.1988) (objections to state court's subject matter jurisdiction over RICO claim waived by failure to pursue issue in federal district court at time of removal); Sorosky v. Burroughs Corp., 826 F.2d 794, 801 (9th Cir.1987) (failure to press objection to state court's subject matter jurisdiction over ERISA claims waived issue of derivative jurisdiction on appeal); Lirette v. N.L. Sperry Sun, Inc., 820 F.2d 116, 117-18 (5th Cir.1987) (en banc) (objections to state court's subject matter jurisdiction over Jones Act claims waived by failure to raise issue upon removal to federal district court).
 
 
 [5]
 The appellants have not joined the magistrate's grant of summary judgment in favor of Western Insurance in this appeal, and consequently the propriety of that action is not before this court